[Cite as *State v. Bryant*, 2024-Ohio-1192.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-17 |
| | : | |
| v. | : | Trial Court Case No. 23CR49 |
| | : | |
| KAMRON M. BRYANT | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 29, 2024

. . . . . . . . . . .

TIMOTHY B. HACKETT, Attorney for Appellant

BRANDON S. MYERS, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Defendant-Appellant Kamron M. Bryant appeals from his convictions in the Miami County Court of Common Pleas after he pleaded guilty to one count of aggravated robbery and one count of misdemeanor assault and was sentenced to an aggregate term of 5 to 7½ years in prison. He was also ordered to pay $25,192.06 in restitution. For the

reasons that follow, the judgment of the trial court will be affirmed.

## I.    Facts and Procedural History

{¶ 2} On the evening of October 28, 2022, 17-year-old Bryant entered the Golden Bowl Buffet in Troy with the intention to eat but not pay. He ate his meal, and then he lured the manager of the restaurant, Jian Li, into the restroom under the guise of the toilet being clogged and ] violently assaulted him. When Gang Chen, another employee, entered the bathroom to investigate the commotion, Bryant beat him as well and then fled in a waiting car driven by his girlfriend.

{¶ 3} Police and medics were called, and the victims were transported to a Miami County hospital. Chen had suffered a laceration below his mouth which required stitches. Li was seriously injured; in addition to superficial cuts and bruises, he suffered a brain bleed and concussion. Due to the severity of his condition, Li was transported to Miami Valley Hospital for treatment of his injuries.

{¶ 4} When the first responders arrived on the scene, Bryant was not present, but he soon returned and spoke with several officers. Sergeant Matt Mosier noticed blood smeared on Bryant's hands and arms and recounted that Bryant had told him inconsistent stories, eventually saying it was "dine and dash" situation. Bryant told Officer Cody Compton that he had struck the victims so he could get out of the restaurant without paying for his food. According to Officer Compton, after being placed under arrest, Bryant became very belligerent and threatened to kill him, his family, and other officers on the scene.

{¶ 5} A few days later, the State filed a complaint alleging that Bryant was a

delinquent juvenile by way of having committed aggravated robbery, a first-degree felony if committed by an adult, and assault, a first-degree misdemeanor if committed by an adult. On October 6, 2022, the State filed an amended complaint adding felonious assault. It then filed a motion to certify Bryant as an adult and asked the juvenile court to transfer the case to the Miami County Court of Common Pleas, General Division, for prosecution.

{¶ 6} On October 28, 2022, the juvenile court conducted a probable cause hearing. After considering testimony from the victims and officers, the court found probable cause that Bryant had committed aggravated robbery, felonious assault, and assault, and ordered a forensic evaluation. It then set the amenability hearing for January 31, 2023. At that proceeding, the parties stipulated to the forensic evaluation by Dr. Carla Dreyer, and the court heard from Officer Compton and Officer Tony Petrovich, Bryant's juvenile probation officer. After considering the testimony, the forensic report, and Bryant's juvenile record, the court found that he was not amenable to care or rehabilitation within the juvenile system and transferred the case to the general division ("adult court").

{¶ 7} Bryant was charged by grand jury indictment with aggravated robbery, felonious assault, and assault. On April 11, 2023, he pleaded guilty to Count 1, aggravated robbery, and Count 3, assault; in exchange for the guilty pleas, the State agreed to dismiss the felonious assault charge in Count 2.

{¶ 8} On May 22, 2023, Bryant appeared in court again, this time for the disposition. At the hearing, the court heard oral statements from Bryant, his attorney, and the State. The court also stated that before the hearing it had reviewed the presentence investigation (PSI) and victim impact statements from Li and Chen. Bryant was sentenced

to 5 to 7½ years on the aggravated robbery and 180 days of local incarceration (to be served concurrently to the prison time) for the misdemeanor assault. He was also ordered to pay restitution to his victims in the amounts of $24,492.06 to Li and $700 to Chen.

{¶ 9} Bryant filed a timely appeal. We will address his arguments in an order that facilitates our analysis.

## II. Transfer of the case to adult court

{¶ 10} In his second assignment of error, Bryant asserts that the juvenile court abused its discretion when it transferred his case to adult court "without sufficient credible evidence of non-amenability." His argument is that, because "additional untested rehabilitative options still remained," he should have been kept in the juvenile justice system instead of being bound over to adult court. We disagree.

{¶ 11} Juvenile courts have exclusive jurisdiction over children alleged to be delinquent, but if a child is old enough and is alleged to have committed an act that would be a felony if committed by an adult, the juvenile court may transfer jurisdiction to adult court for criminal prosecution. *In re D.M.S.*, 2021-Ohio-1214, 170 N.E.3d 61, ¶ 16 (2d Dist.). (In some cases, the court may be required to transfer jurisdiction pursuant to R.C. 2152.12(A), but those circumstances do not apply here.).

{¶ 12} After a complaint has been filed alleging that a child is a delinquent child by reason of committing one or more acts that would be a felony offense if committed by an adult, the juvenile court may transfer the case if it finds all of the following: (1) the child was 14 years of age or older at the time of the act charged; (2) there is probable cause to believe that the child committed the act; and (3) the child is not amenable to care or

rehabilitation within the juvenile system, and the safety of the community may require that the child be subject to adult sanctions. R.C. 2152.12(B)(1)-(3).

{¶ 13} Juv.R. 30(A) stipulates that, upon a motion to transfer jurisdiction, the juvenile court "shall hold a preliminary hearing to determine if there is probable cause to believe that the child committed the act alleged and that the act would be an offense if committed by an adult." If probable cause is established, and after determining that the child is at least 14 years old, the court "shall continue the proceeding for full investigation. The investigation shall include a mental examination of the child by a public or private agency or by a person qualified to make the examination. When the investigation is completed, an amenability hearing shall be held to determine whether to transfer jurisdiction. The criteria for transfer shall be as provided by statute." Juv.R. 30(C).

{¶ 14} In determining whether to transfer the child's case to adult court, the juvenile court must consider the following factors and any other relevant factors in favor of a transfer:

(1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.

(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

(3) The child's relationship with the victim facilitated the act charged.

(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community control sanction, or was on parole for a prior delinquent child adjudication or conviction.

(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

R.C. 2152.12(D).

{¶ 15} The juvenile court must also consider factors militating against the transfer of the youth, such as:

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion

of another person.

(4) The child did not cause physical harm to any person or property, or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or intellectual disability.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

R.C. 2152.12(E).

{¶ 16} There is no requirement that every factor must be "resolved against the juvenile so long as the totality of the evidence supports a finding that the juvenile is not amenable to treatment." *State v. Haynie*, 12th Dist. Clinton No. CA93-12-039, 1995 WL 55289, *5 (Feb. 13, 1995). Because the statutory scheme does not dictate how much weight should be given to any specific factor, the ultimate decision rests in the discretion of the juvenile court. *See State v. Gregory*, 2d Dist. Montgomery No. 28695, 2020-Ohio-5207, ¶ 32; *State v. Cuffie*, 2d Dist. Clark No. 2019-CA-8, 2020-Ohio-4844, ¶ 10.

{¶ 17} In this case, the juvenile court weighed the factors as required by R.C. 2152.12(D) and (E). It specifically found that the victims' injuries were severe, especially Li's, who was transferred to Miami Valley Hospital to deal with the magnitude of the harm

caused (Factor 1). The court further found that Li's age exacerbated the physical harm (Factor 2). Bryant was also on probation with the juvenile court probation department at the time of the incident and had been for three years (Factor 6). As to Factor 7, the juvenile court found that "rehabilitation in the juvenile system for the current charges is not possible." It recounted Bryant's many contacts with the juvenile court dating back to early 2018 and highlighted the sanctions and programs that had been offered to the child to help with rehabilitation, none of which were successful. Addressing Factor 9, the court noted that the psychological evaluation showed that Bryant was both emotionally and psychologically similar to other 17-year-olds and indicated that he was not mentally ill or intellectually disabled. The court noted that:

> Dr. Dreyer concluded that the youth is not amenable to rehabilitation in the juvenile system at this time. This court agrees, and specifically finds that Kamron Bryant is not amenable to rehabilitation in the juvenile court system.
>
> The court specifically finds there is insufficient time to rehabilitate the defendant/youth within the juvenile system.

Amenability Entry at 4. The juvenile court did not state that any of the factors weighing against transfer were met but did "find that the applicable factors in favor of transfer under R.C. 2152.12(D), outweigh the applicable factors against the transfer under R.C. 2152.12(E)." *Id.*

{¶ 18} Based on the record before us, we cannot say that the juvenile court abused its discretion when it found that Bryant was not amenable to rehabilitation in the juvenile system and transferred the case to adult court.

{¶ 19} Nevertheless, Bryant makes some additional arguments that a sanction (or sanctions) within the juvenile system was a more appropriate outcome than transfer to adult court. He first argues that "the juvenile court acted unreasonably when it concluded further rehabilitation was not possible, without even considering the array of dispositional options still available to it." Appellant's Brief at 10. While we understand that a sanction such as a disposition to DYS instead of transfer to adult court would have been more palatable to Bryant, "there is no requirement that a juvenile first be committed to the DYS before he may be transferred to the general division for trial as an adult offender." *State v. Whisenant*, 127 Ohio App.3d 75, 91, 711 N.E.2d 1016 (11th Dist.1998). This argument also ignores the steps that were taken by the juvenile court prior to this case.

{¶ 20} The record indicates that since 2018, Bryant had had *numerous* contacts with the Miami Couty juvenile justice system (see chart below) and that the court had tried many corrective measures. The juvenile court stated that attempts at rehabilitation included: letters of apology, essays, online parenting class, online anger/rage class, community service, CROPS, online THC class, online nicotine class, Outreach Program, online cognitive thinking program, Independent Living Program, many stays at West Central Juvenile Detention Center, probation, restitution, electronic home monitoring, no contact orders, and house arrest. It cannot be said that the court simply "jumped * * * to full-scale adult prison." Appellant's Brief at 11. It merely concluded that adult court was a more appropriate venue to address Bryant's conduct.

| Offense | Disposition Date |
|---|---|
| Disorderly Conduct | March 7, 2018 |
| Unruly | January 7, 2019 |

| Domestic Violence M4 (amended from M1) | May 23, 2019 |
|---|---|
| Criminal Trespass | August 7, 2019 |
| Contempt | August 7, 2019 |
| Theft | August 9, 2019 |
| Tamper/Property | August 12, 2019 |
| Domestic Violence | December 23, 2019 |
| Aggravated Menacing | December 23, 2019 |
| Tobacco Law | December 23, 2019 |
| Failure to Control | January 14, 2020 |
| Unauthorized Use of a Motor Vehicle | January 14, 2020 |
| Contempt | August 4, 2020 |
| Probation Violation | August 4, 2020 |
| Probation Violation | August 18, 2020 |
| Probation Violation | December 19, 2020 (2019 case tolled due to COVID) |
| Tobacco Law | January 7, 2021 |
| Probation Violation | January 7, 2021 |
| Menacing | February 24, 2021 |
| Contempt | February 24, 2021 |
| School Truancy | July 7, 2021 |
| Assault M1 (amended from Felonious Assault F2) | September 9, 2021 |
| Disorderly Conduct | January 11, 2022 |
| Unruly | October 17, 2022 |
| Unruly-Disobey | October 17, 2022 |
| Aggravated Robbery (transferred to adult court) | February 6, 2023 |
| Felonious Assault (transferred to adult court) | February 6, 2023 |
| Assault (transferred to adult court) | February 6, 2023 |
| Probation Violation | February 15, 2023 |

{¶ 21} Bryant also argues that the juvenile court misinterpreted and mischaracterized Dr. Dreyer's forensic evaluation to reach its conclusion that his case should be transferred, but he ignores the straight-forward conclusion of the report. After finding that there were no factors weighing against the transfer, Dr. Dreyer stated: "Given his history and presentation, it does not appear that Kamron would benefit from further

services or intervention provided within the juvenile court system." She went on to conclude that "given his risk for future violence and reoffending, risk factors, lack of protective factors, and history, **Kamron is not amenable to rehabilitation in the juvenile system at this time**." (Emphasis sic.) Forensic Evaluation at 12.

{¶ 22} Based on the record before us, we cannot conclude that the juvenile court abused its discretion when it determined Bryant was not amenable to further interventions within the juvenile justice system. The second assignment of error is overruled.

### III. Transfer of misdemeanor count to adult court

{¶ 23} In his first assignment of error, Bryant argues that the juvenile court erred when it transferred his assault charge to adult court because misdemeanor offenses are not subject to bindover. As a result, he believes the misdemeanor assault conviction is void because the adult court lacked subject matter jurisdiction.

{¶ 24} While both parties agree that misdemeanors – by themselves – cannot be transferred from juvenile court to adult court, they disagree about whether misdemeanors – when combined with felonies – can be transferred.

{¶ 25} A juvenile may be bound over to adult court if the child was at least 14 when the crime(s) was/were committed, there is probable cause to believe that he or she committed the crime(s), and the child is not amenable to rehabilitation in the juvenile system or community safety requires it. R.C. 2152.12(B)(1)-(3). This assignment of error, however, turns on the statutory language just before those bindover requirements. R.C. 2152.12(B) states:

[A]fter a complaint has been filed alleging that a child is a delinquent child

by reason of committing one or more acts that would be an offense if committed by an adult and ***if any of those acts would be a felony*** if committed by an adult, the juvenile court at a hearing ***may transfer the case***[.]

(Emphasis added.) Bryant believes that the focus should be on the phrase "if any of those acts would be a felony." This interpretation of the statute seems to narrowly focus on the felony acts – which everyone agreed could be transferred to the adult court – but ignores any other crime that may have been committed. The State, on the other hand, highlights "may transfer ***the case***." This reading of the statute is more "big-picture," and the focus is on *all* of the crimes committed – the entire case. We agree with the State's interpretation and conclude that once probable cause is found, both felonies and misdemeanors stemming from the youth's criminal conduct and included in the complaint may be transferred to adult court. The plain language of the statute calls for ***the case*** to be transferred, not just the felonies.

{¶ 26} There are other indications that the legislature intended for the entire case to be transferred to adult court as well. R.C. 2152.12(I)(2)(a) states that "[t]he transfer abates the jurisdiction of the juvenile court with respect to the delinquent acts alleged in the complaint in the case," and R.C. 2152.12(I)(2)(b) notes that "[u]pon the transfer, all further proceedings pertaining to the acts charged in the complaint in the case shall be discontinued in the juvenile court." The plain language of those two sections makes it clear that once probable cause is found and the case gets transferred from the juvenile court to adult court, the juvenile court no longer has any ability to proceed. It would not

make sense for misdemeanors to be left behind if the juvenile court cannot do anything with them.

{¶ 27} Further, on April 4, 2023, the legislature enacted a statute that codified the meaning of "case." R.C. 2152.022(A) states:

[I]f the juvenile court under section 2152.10 and division (A)(1) or (B) of section 2152.12 of the Revised Code is required to transfer the "case" or is authorized to transfer the "case" and decides to do so, as used in all provisions of the Revised Code that apply with respect to the transfer, ***"case" means all charges that are included in the complaint or complaints containing the allegation that is the basis of the transfer*** under division (A)(1) or (B) of section 2152.12 of the Revised Code and for which the court found probable cause to believe that the child committed the act charged, regardless of whether the complaint or complaints are filed under the same case number or different case numbers.

(Emphasis added.) Applying that definition here, all three charges – aggravated robbery, felonious assault, and assault – were part of the case and had to be transferred. Although this section was enacted after Bryant was charged, it is another indication that, in a situation such as Bryant's, all of the charges – both felonies and misdemeanors – should be transferred to adult court.

{¶ 28} Finally, even putting aside the clear statutory indications that misdemeanors can be transferred to adult court, Ohio case law is replete with examples of this same scenario happening. *See State v. Smith*, 167 Ohio St.3d 423, 2022-Ohio-274, 194 N.E.3d

297, ¶ 11 (juvenile court found probable cause for both felonies and misdemeanor and transferred all to adult court); *State v. Jones*, 2022-Ohio-1169, 188 N.E.3d 280, ¶ 3-4 (8th Dist.) (juvenile court found probable cause for both felonies and misdemeanors and transferred the case to the general division); *State v. Watkins*, 12th Dist. Clermont No. CA2017-03-013, 2018-Ohio-46, ¶ 2, 6.

**{¶ 29}** Bryant's first assignment of error is overruled.

### IV.    Sentencing requirements

**{¶ 30}** In his third assignment of error, Bryant contends that his prison sentence is "unauthorized by and contrary to law because the trial court plainly failed to comply with the mandatory sentencing provisions of R.C. 2929.19(B)(1)(b)," which require courts to consider youth before imposing adult prison time.

**{¶ 31}** We review felony sentences under the standard set forth in R.C. 2953.08(G)(2), which provides that an appellate court may increase, decrease, modify, or vacate and remand a sentence if it clearly and convincingly finds either that the record does not support the lower court's findings or that the sentence is contrary to law. *State v. Worthen*, 2d Dist. Montgomery No. 29043, 2021-Ohio-2788, ¶ 13, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231.

**{¶ 32}** In sentencing, the trial court must consider the purposes and principles of sentencing and the seriousness and recidivism factors found in R.C. 2929.11 and R.C. 2929.12. Pursuant to R.C. 2929.11(A), "the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public,

or both." Similarly, R.C. 2929.12 contains a list of factors to be considered "regarding the offender, the offense, or the victim" to determine whether the offender's conduct is more serious or less serious than conduct normally constituting the offense and to establish whether the offender is more or less likely to commit crimes in the future. *State v. Spencer*, 8th Dist. Cuyahoga No. 112058, 2023-Ohio-3359, ¶ 21.

{¶ 33} R.C. 2929.11 and R.C. 2929.12 are not fact-finding statutes and, while the sentencing court must "consider" the factors, it is not required to make specific findings on the record regarding its consideration of the factors. *Id.* at ¶ 22. "On a silent record, a trial court is presumed to have considered the statutory purposes and principles of sentencing, and the statutory seriousness and recidivism factors" *State v. Goldblum*, 2d Dist. Montgomery No. 25851, 2014-Ohio-5068, ¶ 50.

{¶ 34} In 2021, the legislature enacted R.C. 2929.12(B)(1)(b), which requires the trial court to consider additional mitigating factors when the offender was under 18 at the time the crime was committed. The statute states, in relevant part:

(b) if the offense was committed when the offender was under eighteen years of age, in addition to other factors considered, consider youth and its characteristics as mitigating factors, including:

(i) The chronological age of the offender at the time of the offense and that age's hallmark features, including intellectual capacity, immaturity, impetuosity, and a failure to appreciate risks and consequences;

(ii) The family and home environment of the offender at the time of the offense, the offender's inability to control the offender's surroundings, a history of trauma regarding the offender, and the offender's school and special education history;

(iii) The circumstances of the offense, including the extent of the offender's participation in the conduct and the way familial and peer pressures may have impacted the offender's conduct;

(iv) Whether the offender might have been charged and convicted of a lesser offense if not for the incompetencies associated with youth, such as the offender's inability to deal with police officers and prosecutors during the offender's interrogation or possible plea agreement or the offender's inability to assist the offender's own attorney;

(v) Examples of the offender's rehabilitation, including any subsequent growth or increase in maturity during confinement.

R.C. 2929.12(B)(1)(b)(i)-(v).

{¶ 35} Bryant asserts that "the trial court did not discuss, recite, or comply with the mandatory requirements" of R.C. 2929.12(B)(1)(b). He believes that the court was required to address the mitigating effects of youth and, because the statute is not mentioned in either the transcript or the judgment entry, "it clearly affected the court's decision." Because this is a relatively new statute, and it does not appear that we have dealt with this issue before, we look to other appellate districts to determine what

appropriate consideration of R.C. 2929.19(B)(1)(b) entails.

{¶ 36} With *State v. Spears*, 2023-Ohio-187, 205 N.E.3d 1261 (5th Dist.), the Fifth District appears to be the first appellate court to address the question of what is appropriate consideration of R.C. 2929.19(B)(1)(b). It compared the analysis of R.C. 2929.19(B)(1)(b) to that of the sentencing considerations found in R.C. 2929.11 and R.C. 2929.12, which mandate that the trial court *consider* the principles and purposes of sentencing and the seriousness and recidivism factors before pronouncing a prison sentence. *Id.* at ¶ 36-40. There is no requirement to make specific findings in that context. *Id.* Specifically, the *Spears* court noted: "While precedent does not require the trial court to produce findings, our holdings with regard to R.C. 2929.11 and R.C. 2929.12 require that the 'necessary findings can be found in the record,' or that 'the record reflects that the trial court considered the purposes and principles of sentencing and the seriousness and recidivism factors[.]' " (Internal citations omitted.) *Id.* at ¶ 40. The Fifth District ultimately concluded that, because R.C. 2929.19's mandate that the trial court consider specific factors was sufficiently similar to the language found in R.C. 2929.11 and R.C. 2929.12, the same analysis should apply. "Consequently, while the trial court need not specify findings regarding the factors listed in R.C. 2929.19(B)(1)(b), we must review the record to determine whether it affirmatively shows the court failed to consider those factors." *Id.*

{¶ 37} In the months since *Spears*, the Third and Eighth Districts have adopted the same analytical framework. *See State v. Bush*, 2023-Ohio-4473, __ N.E.3d __ (3d Dist.); *State v. Spencer*, 8th Dist. Cuyahoga No. 112058, 2023-Ohio-3359. Today we join them

and hold that our review is limited to whether the record affirmatively demonstrates that the court failed to consider the R.C. 2929.19(B)(1)(b) factors.

{¶ 38} In this case, while the trial court failed to mention any of the mitigating factors found in R.C. 2929.19(B)(1)(b), the record confirms that there was evidence pertaining to them before the court. For instance, the court stated that it had considered Bryant's PSI, which included his juvenile criminal history and dispositions (which showed that juvenile justice system interventions were not succeeding), his social and family history (which described his "chaotic" home life, his troubled relationship with his mother due to her constant drug use, physical abuse from his mother's boyfriend and possible sexual abuse at the hands of a cousin), his school record (he dropped out in high school), and a police report. In addition to considering the PSI, the sentencing court discussed on the record all of Bryant's juvenile offenses and particularly noted some acts of violence including multiple domestic violence charges and a 2021 first-degree misdemeanor assault that was amended down from felonious assault, a second-degree felony. It stated, "Mr. Bryant, this was a very troubling case to the court. Very troubling. And I think it's primarily by the fact of your – your young age, and the fact that you've had multiple – numerous interventions with regard to this type of behavior." Sentencing Tr. at 13. The court went on to note that this crime was just the next step in a course of conduct that had lasted for years. "It's a matter of protection of the public, and that's my job. * * * This isn't just an immature decision on your [part], it's an intentional decision." *Id.* at 14-15. Bryant's counsel, likewise, spoke of his age, his "rough childhood" in which he moved constantly, suffered abuse, and never met his father. Defense counsel also noted Bryant's

history with the juvenile court.

{¶ 39} In addition to the statements made at the sentencing hearing, the trial court also had in its possession Bryant's forensic evaluation completed by Dr. Dreyer. That document encompassed several of the R.C. 2929.19(B)(1)(b) factors and went into detail about Bryant's mental and emotional health, how his maturity level compared to his peers, his history, and Dr. Dreyer's opinion about his amenability.

{¶ 40} Based on the statements made at the sentencing hearing and other evidence in the record, we cannot say that the record affirmatively demonstrates that the court failed to consider the R.C. 2929.19(B)(1)(b) factors. Bryant's third assignment of error is overruled.

## V.     Conclusion

{¶ 41} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .


WELBAUM, J. and LEWIS, J., concur.