[Cite as *State v. F.S.*, 2025-Ohio-1251.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                    :

    Plaintiff-Appellee,          :

                                       Nos. 113712, 113713
                                         and 113714

    v.                               :

F.S.,                             :

    Defendant-Appellant.         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, VACATED IN PART AND REMANDED IN PART
**RELEASED AND JOURNALIZED:** April 10, 2025

---

Criminal Appeals from the Cuyahoga County Court of Common Pleas
General and Juvenile Divisions
Case Nos. CR-22-671393-A, CR-22-671394-A, CR-23-683031-A, DL-21-108653,
DL-21-108928, and DL-22-102427

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anthony T. Miranda, Assistant Prosecuting Attorney, *for appellee.*

Elizabeth Miller, Ohio Public Defender, and Victoria Ferry, Assistant Ohio Public Defender, *for appellant.*

EILEEN A. GALLAGHER, A.J.:

{¶ 1} F.S. is a juvenile appealing his convictions from three criminal cases in the Cuyahoga County Court of Common Pleas, General Division ("adult court"), that originated as three separate delinquency cases in the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"). Specifically, F.S. is challenging his convictions in adult court arguing that he had ineffective assistance of counsel and the juvenile court abused its discretion when it found him not amenable to juvenile court rehabilitation and transferred his cases to the adult court. After reviewing the record and pertinent law, we vacate his sentence and plea in DL-22-102427/ CR-23-683031 and remand the case back to juvenile court.

**Factual and Procedural History**

{¶ 2} This appeal stems from three delinquency cases filed in the juvenile court, case numbers: DL-21-108653, DL-21-108928 and DL-22-102427. All three cases had probable cause and amenability hearings, after which they were transferred to the adult court under case numbers: CR-22-671394, CR-22-671393 and CR-23-683031, respectively.

{¶ 3} On November 10, 2021, F.S. entered denials on case numbers DL-21-108653 and DL-21-108928. At that time, the State moved the juvenile court to transfer these two cases to adult court. On March 18, 2022, a probable cause hearing was held for these two cases and the juvenile court found probable cause existed. F.S. was then referred for a psychological evaluation.

{¶ 4} On April 14, 2022, F.S. was arraigned on DL-22-102427 and he denied the charges.

{¶ 5} On June 9, 2022, an amenability hearing was held on cases DL-21-108653 and DL-21-108928. The psychological report prepared by Dr. Lynn Williams on May 26, 2022, was reviewed and stipulated to by the parties. The juvenile court announced its initial determination that F.S. was amenable in case number DL-21-108653 but was not amenable in case number DL-21-108928. After the court announced its decision, F.S. made a comment directed to the judge, which the court did not understand but, according to the assistant prosecuting attorney in the room, "He said, don't let him catch you in Longwood [a Cuyahoga Metropolitan Housing Authority property]." The court considered the words to be a threat and, immediately without leaving the bench, reconsidered its amenability decision and found F.S. was not amenable in DL-21-108653. The juvenile court then granted the State's motion to transfer both cases to adult court.

{¶ 6} On January 26, 2023, a probable cause hearing was held for F.S.'s third case, DL-22-102427. The juvenile court found there was probable cause and ordered another psychological evaluation for F.S. He was evaluated again by Dr. Lynn Williams on March 23, 2023. The report was dated March 30, 2023 and was provided to the parties and the court. Both parties stipulated to the report's findings.

{¶ 7} Meanwhile, the two cases already in the adult court were set for trial on March 6, 2023. F.S. retained his counsel from juvenile court for his cases in adult

court. The morning of trial, F.S.'s counsel raised concerns regarding F.S.'s competency, specifically his inability to assist in his own defense. F.S.'s counsel requested a competency referral. The adult court continued the trial and referred F.S. for a competency evaluation to be completed by the juvenile court's psychiatric clinic.

{¶ 8} A competency evaluation was conducted by Dr. James Rodio on March 24, 2023. Dr. Rodio's report was issued on April 5, 2023 wherein he opined, to a reasonable degree of medical certainty, that F.S. was incompetent since he did not adequately understand the nature and objectives of the proceedings against him and could not adequately assist in his defense. At the competency hearing on April 6, 2023, both parties stipulated to Dr. Rodio's findings. Dr. Rodio recommended that F.S. attend "an inpatient unit for further delineation of specific source of his purported hallucinations (over a period of ongoing assessments)." The court then issued a judgment entry ordering F.S. to participate in the competency remediation program in the Competency Remediation Program of the Cuyahoga County Juvenile Court Diagnostic Clinic.

{¶ 9} While F.S. was participating in the competency remediation program for the adult court, an amenability hearing was held on June 16, 2023 in the juvenile court for his third case, DL-22-102427. The issue of F.S.'s lack of competency was raised in the juvenile court but F.S.'s counsel did not motion the court for a competency hearing and the court proceeded with the amenability hearing despite

the incompetency finding in the adult court and the fact that F.S. was, at the time, participating in the competency remediation program.

{¶ 10} On July 12, 2023, the juvenile court issued a judgment entry finding that F.S. was not amenable to the juvenile justice system and transferred this third case to adult court, which was docketed as case number CR-23-683031.

{¶ 11} On October 18, 2023, at a competency hearing in adult court for cases CR-22-671393 and CR-22-671394, Dr. Rodio's follow-up report, dated October 2, 2023, was presented regarding F.S.'s competency restoration. Both parties stipulated to the findings of the report. In this report Dr. Rodio opined that to a reasonable degree of medical certainty F.S. now understood the nature and objectives of the proceedings against him and was capable of assisting in his defense.

{¶ 12} On January 2, 2024, F.S. entered into a plea agreement that resolved all three cases. He pleaded guilty to one first-degree felony count of aggravated robbery, one second-degree felony count of felonious assault, one fourth-degree felony count of receiving stolen property and one third-degree felony count of tampering with evidence and various firearm specifications. There was a recommended sentence by the parties of 12-15 years of imprisonment.

{¶ 13} On February 5, 2024, the trial court imposed an aggregate sentence of 13-16 years in prison: seven years for the firearm specifications to run consecutive to an indefinite term of six to nine years in prison.

{¶ 14} It is from these convictions that F.S. now appeals raising the following two assignments of error for our review:

## Assignment of Error I:

[F.S.] was deprived of his right to the effective assistance of counsel. Fifth and Fourteenth Amendments to the U.S. Constitution; Article I, Section 16 of the Ohio Constitution. (A-1).

## Assignment of Error II:

The trial court abused its discretion when it transferred [F.S.'s] case for criminal prosecution, in violation of R.C. 2152.12(B); Fifth, and Fourteenth Amendments to the U.S. Constitution; and Article I, Section 10, Ohio Constitution. (A-1); (A-2).

## Law and Argument

### First Assignment of Error

{¶ 15} For his first assignment of error, F.S. argues he was denied effective assistance of counsel due to his trial counsel's alleged failure to make reasonable investigations during the juvenile court proceedings into whether F.S. was competent to stand trial prior to his bindover.[1]

{¶ 16} To succeed on a claim of ineffective assistance of counsel, a defendant must establish that his or her attorney's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668 (1984). One claiming ineffective assistance of counsel bears the burden of demonstrating the following: (1) there has been a substantial violation of an essential duty owed to him by counsel, and (2) he has been thereby prejudiced.

---

[1] As a preliminary matter, the State argues that F.S.'s voluntary guilty plea in adult court waives his claim of ineffective assistance of counsel with respect to the proceedings in juvenile court. This court has previously declined to adopt the State's argument. *State v. D.T.,* 2024-Ohio-4482, ¶ 80 (8th Dist.). This issue has recently been accepted for review by the Supreme Court of Ohio. *State v. D.T.,* 2025-Ohio-231, and *State v. T.S.,* 2025-Ohio-481.

*State v. Bailey*, 2000 Ohio App. LEXIS 1853, *9 (8th Dist. Apr. 27, 2000), citing *State v. Lytle*, 48 Ohio St.2d 391 (1976).

{¶ 17} "As the United States Supreme Court has long held, due process protections must be afforded to children." *State v. D.T.*, 2024-Ohio-4482, ¶ 64 (8th Dist.). *See also In re Gault*, 387 U.S. 1, 30-31 (1967); *State v. Aalim*, 2017-Ohio-2956, ¶ 23. "Fundamental to our adversarial system of justice is the due process right of a criminal defendant who is legally incompetent not to be subjected to trial." *State v. Were*, 94 Ohio St.3d 173, 174 (2002). Ohio courts have consistently held that "the right not to be tried or convicted while incompetent is as fundamental in juvenile proceedings as it is in criminal trials of adults." *In re Bailey*, 2002-Ohio-6792, ¶ 10 (2d Dist.).

{¶ 18} A person is presumed competent "unless it is demonstrated by a preponderance of the evidence that the defendant is incapable of understanding the nature and objective of the proceedings against him or her or of assisting in his or her defense." *State v. Moore,* 2020-Ohio-3459, ¶ 32 (8th Dist.), citing R.C. 2945.37(G). "This fundamental legal principle is inclusive of juvenile proceedings." *In re S.D.,* 2014-Ohio-2528, ¶ 12 (8th Dist.), citing *In re R.H.,* 2013-Ohio-1030, ¶ 9 (8th Dist.).

{¶ 19} A competency determination is necessary only when the defendant's competence is in doubt. *State v. Lawson*, 2021-Ohio-3566, ¶ 48, citing *Godinez v. Moran*, 509 U.S. 389, 401, fn. 13 (1993). The right to a hearing on the issue of competency rises to the level of a constitutional guarantee where the record contains

"sufficient indicia of incompetence," such that an inquiry into the defendant's competency is necessary to ensure the defendant's right to a fair trial. *State v. Berry*, 72 Ohio St.3d 354, 359 (1995).

{¶ 20} To prevail on a claim that counsel was ineffective for failing to seek a competency evaluation, the defendant "must show that his counsel failed to perform an adequate investigation of his possible incompetence." *Lawson* at ¶ 101. Counsel will not be found ineffective for failing to request a competency evaluation "when the defendant does not display sufficient indicia of incompetency to warrant a competency hearing." *Id.* at ¶ 95, citing *State v. Thomas*, 2002-Ohio-6624, ¶ 41. (Stating that "[d]efense counsel is not ineffective in failing to request that the trial court order a competency evaluation or hold a competency hearing when the defendant does not display sufficient indicia of incompetency to warrant a competency hearing").

### Juvenile Court Case Nos. DL-21-108653 and DL-21-108928

{¶ 21} It is important to note that F.S. had the same seasoned defense counsel represent him throughout the lower court proceedings — from his indictment in juvenile court through his pleas in adult court for all three cases. The initial probable cause and amenability hearings in Cuyahoga J.C. Nos. DL-21-108653 and DL-21-108928 were held on March 18, 2022 and June 9, 2022, respectively. There is nothing in the record to indicate that F.S. was incompetent during these juvenile proceedings.

{¶ 22} During the amenability hearing on June 9, 2022, F.S.'s counsel and the juvenile court thoroughly discussed the psychological report prepared by Dr. Lynn Williams and relevant statutory factors regarding whether F.S. was amenable to the juvenile court system. Neither counsel nor the trial court raised any issues regarding F.S.'s competency. Rather, F.S.'s counsel agreed with the psychological report that F.S. "does not appear to be intellectually impaired" and his "cognitive abilities are above the range of intellectual deficiency, that is, he'll be expected at the intellectual capacity to complete high school with the reading accommodations or a vocational program." Counsel also noted that Williams' report reflects that F.S. "is aware of the wrongfulness of his crimes and understands behavioral norms taking into consideration probable cause found for the instant offenses." The trial court considered arguments of counsel as well as its "own personal assessment of the information that's been provided to the Court" and thoroughly evaluated all the statutory factors to determine whether F.S. was amenable to the juvenile court system. Due to the nature of the crimes and F.S.'s actions, amongst other factors, the trial court ultimately held that F.S. was not amenable and bound him over to the adult court.[2]

{¶ 23} It was not until nine months later on March 6, 2023, the day of trial in adult court, that defense counsel raised the issue of competency. At that time, defense counsel explained to the trial court that he had met with F.S. the day before

---

[2] Additional hearings were held in juvenile court in November 2022 and January 2023 with F.S. and his counsel in Cuyahoga J.C. No. DL-22-102427, and no indicia of incompetence was raised at those hearings.

and noticed F.S. had become "increasingly inattentive . . . [and] became basically nonresponsive to any reasonable inquiries." It was based on this interaction that defense counsel told the court, "I would be remiss if I did not suggest that I have serious evidence-based concern with his ability to cooperate with his defense."

{¶ 24} Courts have recognized that "'a defendant's counsel is in the best position to evaluate a client's comprehension of the proceedings.'" *Lawson,* 2021-Ohio-3566, at ¶ 64, quoting *Stanley v. Cullen,* 633 F.3d 852, 861 (9th Cir. 2011). Here, defense counsel told the juvenile court that, during the juvenile proceedings, he had "some concerns" but he had attributed his concerns to "issues that were not so disturbing to me." Counsel stated that F.S. was impulsive but noted he did not "see that as a major problem. Many clients have impulse control." Counsel went on to state that during the juvenile proceedings, he did not see anything that rose "to the level of major concern, just part of who [F.S.] is."

{¶ 25} F.S.'s counsel explained, "I have been provided confidential reports and I was provided various explanations that frankly allayed my concerns. Had I thought he was incompetent rather than just immature earlier in these proceedings, I would have moved for a competency evaluation through the juvenile court." In fact, while discussing these reports with the juvenile court in June 2022, defense counsel noted that, with respect to whether F.S. suffered from disruptive impulse control, the psychological report indicated "no distinct pattern of conduct disorder behaviors."

{¶ 26} Defense counsel's impressions of F.S. during the juvenile proceedings in case Nos. DL-21-108653 and DL-21-108928 did not indicate that F.S. was incompetent or was unable to understand the nature of the charges or proceedings against him. "A defendant suffering from a mental disability or a learning disability may still possess the ability to understand the charges and proceedings against him or her and be able to assist in his or her defense." *Moore,* 2020-Ohio-3459, at ¶ 41, citing *State v. Vrabel,* 2003-Ohio-3193, ¶ 29. Rather, "[t]he test for competency focuses entirely on the defendant's ability to understand the meaning of the proceedings against him and his ability to assist in his own defense, which can be satisfied regardless of the defendant's mental status or IQ." *Id.,* citing *State v. McMillan*, 2017-Ohio-8872, ¶ 29 (8th Dist.).

{¶ 27} This court has recognized that "a juvenile's mental capacity (and competency) may change over time." *D.T.*, 2024-Ohio-4482, at ¶ 99, citing R.C. 2152.56(D) and 2152.59. And the Supreme Court of Ohio has advised us that when reviewing an attorney's performance, "[h]indsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time." *State v. Cook,* 65 Ohio St.3d 516, 524 (1992), citing *Strickland,* 466 U.S. at 687-689.

{¶ 28} Based on the record, F.S. did not display any indicia of incompetence, let alone sufficient indicia of incompetence, during the juvenile proceedings for Cuyahoga J.C. Nos. DL-21-108653 and DL-21-108928. Absent this contemporaneous evidence, we cannot find the F.S.'s counsel was ineffective for not raising the issue in the juvenile court for these two cases.

## Juvenile Court Case No. DL-22-102427

{¶ 29} With regard to juvenile court case No. DL-22-102427, the amenability hearing was held on June 16, 2023, after F.S. was found incompetent by a medical professional and while F.S. was undergoing competency restoration. The juvenile court[3] acknowledged this fact as well as the fact that defense counsel did not formally request a competency evaluation. The record reflects the following exchange with the juvenile court:

> THE COURT: And as I understand it, [defense counsel], you're not raising the competency issue at this stage of the proceedings in Juvenile Court, but you're asking the Court to consider the facts that led to that finding in terms of how it would relate to the amenability factor.
>
> [DEFENSE COUNSEL]: Precisely. I'm just asking, as I think the Statute either expressly or [impliedly] requires taking a holistic approach.

{¶ 30} The trial court further acknowledged, "Well, I think that, as you both know, I'm sure, although there have not been instances for a long time, we now have separate competency statutes specifically under the Juvenile Code . . . if there's a motion filed on the cases that are staying in Juvenile Court for competency, then I have to address that." Yet, despite counsel and the trial court's acknowledgment that F.S. had been deemed incompetent in adult court and was in the process of participating in the juvenile court's competency remediation program, defense

---

[3] A visiting judge was assigned to the case after the juvenile court judge recused because the juvenile court judge heard F.S. threaten him at the end of the prior amenability hearing.

counsel failed to request a competency evaluation in juvenile case No. DL-22-102427.[4]

{¶ 31} In this case, we have a juvenile who was found incompetent in adult court on April 5, 2023. However, no formal motion was made by F.S.'s counsel to evaluate his competency in this case prior to the amenability hearing on June 16, 2023, in the juvenile court, despite the fact that there was more than sufficient indicia that incompetency was an issue at that time. As such, we find F.S.'s counsel was ineffective when he failed to move the court for a competency determination in case no. DL-22-102427 after F.S. was found incompetent in the adult court proceedings.

{¶ 32} Therefore, we sustain F.S.'s first assignment of error in part, vacate his sentence and plea in case no. DL-22-102427/CR-23-683031 and remand the case back to juvenile court to evaluate F.S.'s competency before any proceedings.

**Second Assignment of Error**

{¶ 33} In his second assignment of error, F.S. alleges the juvenile court abused its discretion in transferring his cases to adult court. Based on the above resolution of F.S.'s first assignment of error, we find that the issue of whether the juvenile court abused its discretion in case no. DL-22-102427 is rendered moot

---

[4] The State argues competency was not a factor for amenability determinations in June 2023 pursuant to *State v. Cruz,* 2010-Ohio-3717 (8th Dist.). However, whether or not competency was a factor for amenability determinations, even the trial court acknowledged juvenile court statutes, set forth in R.C. 2152.51-2152.59, require a juvenile be competent during juvenile court proceedings, including the amenability hearing. *See D.T.,* 2024-Ohio-4482.

pursuant to App.R. 12(A)(1)(c). We shall now review the amenability hearing on June 9, 2022, for case Nos. DL-21-108653 and DL-21-108928 for an abuse of discretion.

{¶ 34} An appellate court reviews a juvenile court's amenability determination under an abuse-of-discretion standard. *In re M.P.*, 2010-Ohio-599, ¶ 14. A trial court abuses its discretion when its decision is unreasonable, arbitrary or unconscionable. *State v. Hill*, 2022-Ohio-4544, ¶ 9, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). So long as the juvenile court considers the appropriate statutory factors and the record provides a rational and factual basis to support its decision, the juvenile court's amenability determination cannot be reversed. *State v. Nicholson*, 2022-Ohio-2037, ¶ 206 (8th Dist.), citing *State v. Crosby*, 2019-Ohio-2217 (8th Dist.).

{¶ 35} "Juvenile courts possess exclusive jurisdiction over children alleged to be delinquent for committing acts that would constitute a crime if committed by an adult." *In re M.P.* at ¶ 11; R.C. 2151.23(A).

> Pursuant to R.C. 2152.12, under specified circumstances a juvenile may be subject to a mandatory or discretionary transfer, also referred to as bindover, from the juvenile court setting to adult court for criminal prosecution. Whether an alleged offender is subject to mandatory or discretionary transfer depends on such factors as the nature of the offense, the age of the child, and the child's prior criminal history.

R.C. 2152.12(A) and (B); *State v. Jones*, 2022-Ohio-1169, ¶ 19 (8th Dist.), citing *Steele v. Harris*, 2020-Ohio-5480, ¶ 10.

{¶ 36} In this case, F.S.'s transfer was discretionary. "Discretionary transfer, as its name implies, allows judges the discretion to transfer or bind over to adult court certain juveniles who do not appear to be amenable to care or rehabilitation within the juvenile system or appear to be a threat to public safety." *State v. Hanning*, 89 Ohio St.3d 86, 90 (2000); R.C. 2152.12(C). In a discretionary transfer proceeding, the juvenile court may transfer the child to adult court for prosecution if it finds (1) that the child was at least 14 years old at the time of the charged act; (2) there is probable cause to believe that the child committed the charged act and (3) the child is not amenable to care or rehabilitation within the juvenile system and the safety of the community may require that the child be subject to adult sanctions. R.C. 2152.12(B). *State v. Taylor*, 2024-Ohio-5094, ¶ 35 (8th Dist.).

{¶ 37} Here, it is undisputed that F.S. was older than 14 years old at the time of the underlying offenses which satisfies the first requirement. Next, the court is required to determine if there was probable cause that F.S. committed the acts charged. *Taylor* at ¶ 35. Here, there was no objection to the finding of probable cause so this requirement is met as well. With probable cause established, the last thing the juvenile court was required to do was conduct an amenability hearing.

{¶ 38} An amenability hearing "'is a factual determination of whether the accused is amenable to treatment and rehabilitation within the juvenile penal system.'" *Jones*, 2022-Ohio-1169, at ¶ 22, quoting *State v. Hopfer*, 112 Ohio App.3d 521 (2d Dist. 1996). In making the amenability determination under R.C. 2152.12(B), the juvenile court must weigh the statutory factors favoring transfer in

R.C. 2152.12(D) against the statutory factors disfavoring transfer in R.C. 2152.12(E) and indicate on the record the specific factors it weighed in making its determination. R.C. 2152.12(B)(3); *Taylor* at ¶ 35. The juvenile court also orders an investigation into the child's social history, education, family situation and other relevant factors including a mental examination. R.C. 2152.12(C); *Jones* at ¶ 22. Discretionary transfer occurs only after a juvenile court finds the juvenile is unamenable. *Id.*

{¶ 39} The statutory factors that a juvenile court must consider "in favor of transfer" include whether:

(1) The victim of the act charged suffered physical or psychological harm, or serious economic harm, as a result of the alleged act.

(2) The physical or psychological harm suffered by the victim due to the alleged act of the child was exacerbated because of the physical or psychological vulnerability or the age of the victim.

(3) The child's relationship with the victim facilitated the act charged.

(4) The child allegedly committed the act charged for hire or as a part of a gang or other organized criminal activity.

(5) The child had a firearm on or about the child's person or under the child's control at the time of the act charged, the act charged is not a violation of section 2923.12 of the Revised Code, and the child, during the commission of the act charged, allegedly used or displayed the firearm, brandished the firearm, or indicated that the child possessed a firearm.

(6) At the time of the act charged, the child was awaiting adjudication or disposition as a delinquent child, was under a community-control sanction, or was on parole for a prior delinquent child adjudication or conviction.

(7) The results of any previous juvenile sanctions and programs indicate that rehabilitation of the child will not occur in the juvenile system.

(8) The child is emotionally, physically, or psychologically mature enough for the transfer.

(9) There is not sufficient time to rehabilitate the child within the juvenile system.

R.C. 2152.12(D).

**{¶ 40}** The statutory factors that a juvenile court must consider "against a transfer" are whether:

(1) The victim induced or facilitated the act charged.

(2) The child acted under provocation in allegedly committing the act charged.

(3) The child was not the principal actor in the act charged, or, at the time of the act charged, the child was under the negative influence or coercion of another person.

(4) The child did not cause physical harm to any person or property or have reasonable cause to believe that harm of that nature would occur, in allegedly committing the act charged.

(5) The child previously has not been adjudicated a delinquent child.

(6) The child is not emotionally, physically, or psychologically mature enough for the transfer.

(7) The child has a mental illness or intellectual disability.

(8) There is sufficient time to rehabilitate the child within the juvenile system and the level of security available in the juvenile system provides a reasonable assurance of public safety.

## DL-21-108653 and DL-21-108928 – Amenability Hearing

{¶ 41} On June 9, 2022, the juvenile court held an amenability hearing for F.S.'s two cases DL-21-108653 and DL-21-108928 at which the parties stipulated to the report prepared by Dr. Williams on May 26, 2022.

{¶ 42} For DL-21-108653 the trial court's judgment entry reflects that the court considered the required statutory factors for transfer pursuant to R.C. 2152.12(D)(1)-(9). Here the court found factors (1), (5) and (8) weighed in favor of transfer and that the other factors were not relevant. The court found pursuant to factor (1) that the victim of the act charged, the police officer who F.S. drove a stolen vehicle into, suffered physical or psychological harm as a result of the alleged act. Pursuant to factor (5), the court found F.S. had a firearm on his person, which was found after he threw it over a fence while running from the police. The court also found, pursuant to factor (8), that F.S. is emotionally, physically or psychologically mature enough for the transfer. For this case, the juvenile court also considered the fact that during the amenability hearing F.S. verbally threatened the juvenile court judge in an outburst and that his threatening nature supports that he is not amenable.

{¶ 43} The court then considered the factors weighing against transferring F.S. to adult court, pursuant to R.C. 2152.12(E). Here the trial court considered factors (5) and (8) as relevant and found that the other factors did not apply. Pursuant to factor (5), the court found F.S. had not been previously adjudicated a delinquent child. Pursuant to factor (8), the court found there was sufficient time

to rehabilitate the child within the juvenile system. Of note, F.S. did not argue, and the trial court did not find, that F.S. suffered from any mental illness or intellectual disability.

{¶ 44} We find the juvenile court considered the appropriate statutory factors for, and against, transfer and the record provide a rational and factual basis to support this decision. *Taylor*, 2024-Ohio-5094, at ¶ 37.

{¶ 45} For DL-21-108928 the trial court's judgment entry reflects that the court considered the required statutory factors for transfer pursuant to R.C. 2152.12(D)(1)-(9). Here the court found factors (1), (5), (8) and (9) weighed in favor of transfer and that the other factors were not relevant. Pursuant to factor (1), the court found the victim of the act charged, a man who F.S. robbed at gunpoint and eventually shot, suffered physical harm as a result of the alleged act. The court noted this factor weighed heavily in this case. Pursuant to factor (5), the court found F.S. had and used a firearm during the commission of the act charged. Pursuant to factor (8), the court found that F.S. is emotionally, physically or psychologically mature enough for the transfer. Last, the court considered factor (9) that there is not sufficient time to rehabilitate F.S. within the juvenile justice system, which the court noted weighed heavily.

{¶ 46} The court then considered the factors weighing against transferring F.S. to adult court pursuant to R.C. 2152.12(E). For DL-21-108928 the juvenile court found the only relevant factor to consider against transferring was factor (5) that the child had not been adjudicated a delinquent child but was allowed to

participate in diversion. The court did not find any other factors against transfer. Upon review, we find the juvenile court considered the appropriate statutory factors for, and against, transfer and the record provide a rational and factual basis to support this decision. *Taylor* at ¶ 37.

{¶ 47} Therefore, we find the juvenile court in both DL-21-108653 and DL-21-108928 did not abuse its discretion when it determined that F.S. was not amenable to rehabilitation in the juvenile court system under R.C. 2152.12(B). The juvenile court considered F.S.'s full investigation, including the psychological examination and the evidence presented at the amenability hearing, and weighed the statutory factors for and against transfer as required by R.C. 2152.12(D) and (E), including that he used a firearm and his age. The juvenile court did not abuse its discretion in F.S.'s amenability hearings for case nos. DL-21-108653 and DL-21-108928. F.S.'s second assignment of error is overruled.

{¶ 48} Judgment is hereby affirmed in part, vacated in part and remanded in part.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

MICHELLE J. SHEEHAN, J., and
KATHLEEN ANN KEOUGH, J., CONCUR